**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No. 14-10979 (CSS) |
| *Debtors.* | (Jointly Administered) |
| CSC TRUST COMPANY OF DELAWARE, as INDENTURE TRUSTEE, | |
| *Plaintiff,* | |
| v. | Adversary Proceeding No. 14-_____ |
| ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC and EFIH FINANCE INC., | |
| *Defendants.* | |

**COMPLAINT FOR DECLARATORY RELIEF**

CSC Trust Company of Delaware ("CSC Trust"), as indenture trustee (the "10% Indenture Trustee")[1] for the 10% Notes issued by EFIH (as defined below) under the Indenture dated as of August 17, 2010 (together with all supplements, amendments, and exhibits, the "10% Indenture", copies of which are attached hereto as Exhibit A and

---

[1] The 10% Indenture Trustee files this complaint at the written direction of holders with a majority in principal amount of the 10% Notes.  CSC Trust is also the indenture trustee for the approximately $502.7 million in principal amount of 6.875% first lien notes due 2017 issued under that certain indenture dated August 14, 2012 between EFIH and CSC Trust, as successor indenture trustee (the "6.875% Indenture").  Although CSC Trust has not been directed by a majority of holders of the 6.875% notes, the 10% Indenture and the 6.875% Indenture are substantively identical with respect to the issues raised by this Complaint (except for the amount of the Applicable Premium).

Exhibit B) between Energy Future Intermediate Holdings LLC ("EFIH LLC"), EFIH

Finance Inc. ("EFIH Finance," and together with EFIH LLC, "EFIH" or the "EFIH

Debtors") and CSC Trust (as successor to The Bank of New York Mellon Trust

Company, N.A.), by its undersigned counsel, hereby alleges for its Complaint for

Declaratory Relief against Defendants Energy Future Intermediate Holdings Corporation

LLC and EFIH Finance Inc., upon knowledge of its own acts and upon information and

belief as to all matters, as follows:[2]

## NATURE OF ACTION

1.      This is a declaratory judgment action by which the 10% Indenture Trustee

seeks a declaration that EFIH is obligated to pay a $665.2 million redemption premium in

connection with the proposed refinancing of the 10% Notes.

2.      In issuing $3.482 billion of 10% Notes, EFIH induced holders to purchase

the notes by offering call protection, including a redemption premium.  A redemption

premium protects a holder's right to the yield that was contracted for at the time notes are

issued and/or purchased.  The issuer, in turn, benefits from obtaining lower interest rates

or fees than would otherwise be available absent such call protection.  If interest rates

decline, the issuer can determine whether the interest savings from a refinancing will

exceed the required redemption premium and, if the net savings justify, may refinance the

notes.

3.      At the very outset of these chapter 11 cases, EFIH seeks to do in

bankruptcy what it could not do outside of bankruptcy – refinance the 10% Notes at

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the 10%
Indenture (as defined below).

lower interest rates without the payment of the redemption premium. Prebankruptcy, EFIH solicited, negotiated, and obtained commitments for financing that would be used primarily to refinance the 10% Notes. If EFIH were to have repaid the 10% Notes the day prior to the Petition Date, there would be no dispute that the redemption premium was due. There is no basis in law or the 10% Indenture for EFIH to avoid its redemption premium obligations by filing a voluntary bankruptcy petition, particularly where, as here, the 10% Notes are substantially oversecured.

4.      EFIH is seeking Court approval of debtor-in-possession financing to be used to refinance all principal and accrued interest under the 10% Notes. The 10% Indenture requires the payment of the redemption premium upon such refinancing. The 10% Indenture provides for payment of the redemption premium if EFIH "redeems" the Notes "at any time prior to" December 1, 2015. 10% Indenture § 3.07(a). That is precisely what EFIH seeks to do here.

5.      EFIH has asserted that the automatic acceleration of the 10% Notes upon the bankruptcy filing renders the redemption premium inapplicable. As an initial matter, the 10% Indenture contains no carve-out from payment of the redemption premium upon acceleration. Further, the 10% Indenture provides a majority of holders with the contractual right to, on behalf of all holders, rescind any acceleration and its consequences. Thus, to the extent EFIH argues that acceleration of the 10% Notes eliminates EFIH's obligations to pay the redemption premium, the holders' right to rescind such acceleration and its consequences renders the redemption premium nevertheless payable.

6.      By this adversary proceeding, the 10% Indenture Trustee seeks declaratory judgment affirming that, pursuant to Section 3.07 of the 10% Indenture, EFIH is obligated to pay the redemption premium in connection with the refinancing of the 10% Notes out of the proceeds of the proposed debtor-in-possession financing.

## JURISDICTION AND VENUE

7.      Jurisdiction exists over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 because, alternatively (i) it arises in the chapter 11 cases of EFIH LLC and EFIH Finance pending in the United States Bankruptcy Court for the District of Delaware, jointly administered under the case of *In re Energy Future Holdings Corp.*, Case No. 14-10979 (CSS), (ii) it relates to the EFIH LLC and EFIH Finance chapter 11 cases, or (iii) it arises under the Bankruptcy Code, insofar as a declaration of allowable secured claims.

8.      The statutory predicate for relief is 28 U.S.C. § 2201 and section 105(a) of the Bankruptcy Code.

9.      The counts herein are core matters.  However, the 10% Indenture Trustee does not consent to the entry of final orders by the Bankruptcy Court to the extent that (i) any party asserts counterclaims, cross claims, or third party claims against the 10% Indenture Trustee, or (ii) any court of competent jurisdiction rules that claims in the nature of those asserted in these actions are non-core, or otherwise may not be adjudicated by a court other than an Article III court.  To the extent that any matter considered in connection with this action is non-core or may not be adjudicated by a court other than an Article III court, the 10% Indenture Trustee does not consent to the

Bankruptcy Court hearing and determining dispositive motions, and does not consent to the Bankruptcy Court making proposed findings of fact and conclusions of law.

10.     Venue of this Adversary Proceeding in this district is proper pursuant to 28 U.S.C. § 1409 because (a) the above-captioned chapter 11 case to which this case is related is pending in this District before this Court and (b) none of the exceptions set forth in 28 U.S.C. § 1409 apply to this action.

**PARTIES**

11.     Plaintiff CSC Trust Company of Delaware is a Delaware state chartered trust company having its principal place of business in Wilmington, Delaware.  CSC Trust is the indenture trustee, as successor trustee to The Bank of New York Mellon Trust Company, N.A., under the 10% Indenture.

12.     Defendant Energy Future Intermediate Holding Company LLC is a Delaware limited liability company and is a debtor in these chapter 11 cases.  EFIH LLC is a holding company with no operations.  The primary asset of EFIH LLC is its 80% ownership interest in Oncor Electric Delivery Holdings Company LLC (together with its direct and indirect subsidiaries, "Oncor").  Oncor, a non-debtor, is a regulated electricity transmission and distribution company that operates in Texas.

13.     Defendant EFIH Finance Inc. is a Delaware corporation and is a debtor in these chapter 11 cases.  EFIH Finance is a direct, wholly-owned subsidiary of EFIH LLC. EFIH LLC was formed for the sole purpose of serving as co-issuer with EFIH LLC of certain debt securities, including the 10% Notes.

## FACTUAL ALLEGATIONS

14.     On April 29, 2014 (the "Petition Date"), EFIH filed voluntary petitions for relief under Chapter 11, title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").  The chapter 11 cases of EFIH LLC and EFIH Finance (together, the "Chapter 11 Cases") remain pending in the United States Bankruptcy Court for the District of Delaware.

15.     Prior to the Petition Date, EFIH solicited, negotiated and obtained commitments for financing in a transparent attempt to avoid its obligations to pay the redemption premium as required by the 10% Indenture.  Then, on the very first day of the Chapter 11 Cases, EFIH filed a motion for authority to enter into the first lien debtor-in-possession financing (the "EFIH First Lien DIP Financing") with the express purpose of refinancing all of the 10% Notes at lower interest rates and without paying the required redemption premium.

16.     This scheme – which was contrived and put into motion prior to the Petition Date – is based on the false proposition that a bankruptcy acceleration of the 10% Notes renders the redemption premium unenforceable.  This proposition is contrary to the terms of the 10% Indenture and the 10% Notes, and violates the most basic principles of bankruptcy law.

## I.    THE 10% INDENTURE

17.    Pursuant to the 10% Indenture, EFIH issued $3,482,106,000 aggregate

principal amount of 10% Senior Secured Notes Due 2020 (the "10% Notes")[3].  The 10%

Notes were issued in two separate issuances consisting of $2,180,000,000 of principal

amount issued on or about August 17, 2010, and $1,302,106,000 of principal amount

issued on or about January 29, 2013.

## II.    THE REDEMPTION PREMIUM

18.    The stated maturity date of the 10% Notes is December 1, 2020.  The 10%

Indenture provides that EFIH may not redeem the 10% Notes prior to the stated maturity

date except that EFIH may elect to redeem the 10% Notes earlier if EFIH pays a premium

to the holders.  Specifically, Section 3.07(c) of the 10% Indenture provides:

> Except pursuant to clause (a) [the redemption premium] or
> (b) [the equity claw] of this Section 3.07, the Notes shall
> not be redeemable at the Issuer's option prior to December
> 1, 2015.

19.    If EFIH redeems the 10% Notes prior to the stated maturity date, the

calculation of the premium depends upon the date on which the 10% Notes are redeemed.

Specifically, Section 3.07(a) of the 10% Indenture provides that EFIH may redeem the

10% Notes prior to December 1, 2015 if and only if EFIH pays a redemption premium

(defined as the "Applicable Premium" in the 10% Indenture):

---

[3] Certain of the 10% Notes, specifically CUSIP 29269QAK3, were issued with an associated registration
rights agreement that provides that if such notes are not registered by a date certain, thereafter the notes pay
"Additional Interest," first at 0.25% per annum for a period and thereafter at 0.5% per annum.  EFIH did
not register this issuance, and therefore Additional Interest is payable and accruing.  For the convenience of
the Court and parties, all notes issued under the 10% Indenture, including those with Additional Interest,
are referred to collectively as "10% Notes."

> At any time prior to December 1, 2015, the Issuer may redeem all or a part of the Notes at a redemption price equal to 100% of the principal amount of the Notes redeemed <u>plus</u> the Applicable Premium as of and accrued and unpaid interest to, the date of redemption (the "<u>Redemption Date</u>"), subject to the right of Holders of Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date.

(emphasis in original).

20.     The formula for calculating the Applicable Premium is provided in Section 1.01 of the 10% Indenture:

> "Applicable Premium" means, with respect to any Note on any Redemption Date, the greater of (1) 1.0% of the principal amount of such Note; and (2) the excess, if any, of (a) the present value at such Redemption Date of (i) the redemption price of such Note at December 1, 2015 (such redemption price as set forth in the table appearing under Section 3.07(d) hereof), plus (ii) all required interest payments due on such Note through December 1, 2015 (excluding accrued and unpaid interest to the Redemption Date), computed using a discount rate equal to the Treasury Rate as of such Redemption Date plus 50 basis points; over (b) the principal amount of such Note.

21.     After December 1, 2015, but before December 1, 2020, EFIH may redeem the 10% Notes by paying the redemption prices set forth in Section 3.07(d) of the 10% Indenture.

22.     The redemption premium provision, namely Section 3.07(a), is the operative section of the 10% Indenture and is the most relevant and controlling with respect to whether the redemption premium is owed under the circumstances.

23.     The refinancing for which the EFIH Debtors have sought authorization (currently contemplated by the Debtors on or about June 6, 2014), constitutes a

"redemption" as described in Section 3.07(a) of the 10% Indenture.  Pursuant to Section 3.07(a) of the 10% Indenture, as of June 6, 2014, the aggregate amount of the redemption premium due on the 10% Notes is $665,245,656.

24.    The 10% Indenture and 10% Notes contain independent provisions governing acceleration of the 10% Notes and the consequences thereof, but these provisions are not inconsistent with the foregoing redemption provisions that mandate payment of the premium under these circumstances.  The 10% Indenture and 10% Notes provide that "[i]f any Event of Default occurs and is continuing, the Trustee or [30% of Holders] may declare principal, premium, if any, interest and any other monetary obligations on all of the then outstanding Notes to be due and payable immediately," and that upon a bankruptcy default "all outstanding Notes shall be due and payable immediately."  10% Indenture § 6.02; 10% Notes ¶ 12.  The 10% Indenture goes on to specify what is payable, with a covenant that "[t]he Issuer shall pay or cause to be paid the principal, premium, if any, and interest on the Notes on the dates and in the manner provided in the Notes."  10% Indenture § 4.01.

25.    The Debtors themselves have adopted the foregoing reading of the 10% Indenture and 10% Notes in at least one prior statement on whether the premium would be due upon a redemption in bankruptcy.  Contemporaneous with the 10% Notes issuance, the Debtors stated in the prospectus for the original issuance:

> In the event that EFIH becomes the subject of a bankruptcy proceeding, you will only have a claim against EFIH's assets . . . to satisfy any outstanding principal, premium and interest on the [10% Notes] . . . . (emphasis added)

EFIH Form S-4 Registration Statement dated July 16, 2010 at 52 (emphasis added).

26. The 10% Indenture requires the payment of the redemption premium upon payment of the 10% Notes through the EFIH First Lien DIP Financing. To the extent that any party suggests that the provisions of the 10% Indenture mandating the payment of the redemption premiums are ambiguous, such ambiguity must be construed against EFIH, as drafter of the 10% Indenture, to require payment of the redemption premiums.

27. Upon information and belief, EFIH and/or persons under its control or direction were responsible for drafting the 10% Indenture and the 10% Notes, including Sections 1.01 (defining "Applicable Premium"), 3.07(a) (providing for the payment of the Applicable Premium upon a redemption prior to December 1, 2015), 3.07(c) (prohibiting payment prior to December 1, 2015 except as otherwise provided), 6.02 (regarding acceleration), and 6.04 (regarding rescission of acceleration), as well as the provisions on the reverse of the 10% Notes.

28. The drafting of the 10% Indenture and 10% Notes by EFIH and/or persons under its control or direction is demonstrated by other indentures by which EFIH and its affiliates issued other notes. For example, the indentures governing the prior notes for which certain of the 10% Notes were exchanged contained substantively identical redemption provisions. The indenture for the unsecured notes issued by EFIH contain substantively identical provisions as well.

## III. THE REFINANCING OF THE FIRST LIEN NOTES CONSTITUTES A REDEMPTION

29. The conduct of EFIH in the months prior to the Petition Date demonstrates that the refinancing of the 10% Notes through the EFIH First Lien DIP Financing constitutes a redemption within the scope of Section 3.07(a) of the 10% Indenture.

30.     In the approximately nine months prior to the Petition Date, various creditor constituencies, including certain holders of EFIH unsecured bonds, made proposals to EFIH that expressly contemplated a refinancing of the 10% Notes without the payment of the required Applicable Premium. *See, e.g.*, EFIH Form 8-k dated Oct. 15, 2013 Ex. 99.2 (describing creditor proposal for refinancing without premium); EFIH Form 8-k dated Nov. 1, 2013 Ex. 99.1 (same).

31.     Prior to the Petition Date, EFIH solicited proposals for debtor-in-possession financing that would enable EFIH to obtain first lien financing with lower interest rates than the interest rates provided for in the 10% Notes.

32.     EFIH negotiated the terms of the EFIH First Lien DIP Financing prior to the Petition Date.

33.     The amount of the EFIH First Lien DIP Financing that EFIH solicited and negotiated prior to the Petition Date was based, in part, on paying all outstanding principal and interest on the 10% Notes, but without the payment of any redemption premium on the 10% Notes.

34.     Prior to the Petition Date, EFIH entered into agreements to pay commitment and other fees to one or more lenders to secure commitments for the EFIH First Lien DIP Financing, which would be available to EFIH after the Petition Date, for EFIH to refinance the 10% Notes without the payment of any redemption premium.

35.     Accordingly, prior to the Petition Date, EFIH contemplated and obtained commitments for financing to redeem the 10% Notes.

36.     EFIH's prepetition actions demonstrate that the EFIH Chapter 11 Cases are a transparent effort to use bankruptcy as a means to refinance their debt without honoring their contractual obligations under the 10% Notes and the 10% Indenture.

37.     On May 7, 2014, EFIH commenced a tender offer for the 10% Notes (the "First Lien Tender Offer"), as set forth in an Information Memorandum, a copy of which is attached hereto as Exhibit C.

## IV.     INTENTIONAL DEFAULT

38.     Beginning in late 2012, a series of exchange offers resulted in substantial new debt incurrence at EFIH, and the current EFIH unsecured notes first became creditors at the EFIH level.

39.     Denial of the redemption premium is a stated purpose of the EFIH First Lien DIP Financing Motion.  EFIH and junior creditors had substantial discussions prepetition regarding a plan to use chapter 11 to deny the redemption premium on the 10% Notes.

40.     On information and belief, one or more holders of substantial amounts of EFIH unsecured notes held discussions with management of EFIH regarding compensation arrangements for the period after a restructuring that would be on terms acceptable to those holders, which includes full or substantial denial of the redemption premium on the 10% Notes.

41.     During 2013 there were significant efforts by EFH's equity owners to avoid placing the EFIH Debtors into chapter 11.

42.     EFIH and its parent company (also a debtor), Energy Future Holdings

Corp. ("EFH"), have come to an arrangement prepetition to move a major cash flow – the

Oncor Tax Sharing Agreement – from EFH to EFIH.

43.     When EFIH filed its chapter 11 petitions on the Petition Date, EFIH

intended to deny payment of the redemption premium (other than the small portion of the

redemption premium reflected in the settlement proposed in the First Lien Tender Offer).

## V.      RESCISSION OF ACCELERATION

44.     To the extent that automatic acceleration of the 10% Notes could be

construed to preclude payment of the redemption premium – which it cannot – the 10%

Indenture nevertheless requires payment of the redemption premium.  A majority of

holders may, on behalf of all holders, rescind automatic acceleration of the 10% Notes

and its consequences:

> The Holders of at least a majority in aggregate principal
> amount of the Notes by written notice to the Trustee may
> . . . rescind any acceleration with respect to the Notes and
> its consequences (so long as such rescission would not
> conflict with any judgment of a court of competent
> jurisdiction).

10% Indenture § 6.02.

45.     This contractual right to rescind acceleration and its consequences gives

rise to a claim within the meaning of section 101(5) of the Bankruptcy Code.  Thus, to

the extent that the commencement of the EFIH Chapter 11 Cases, the automatic stay, or

the automatic acceleration of the 10% Notes can be construed to prevent rescission of

acceleration, the 10% Indenture Trustee nevertheless has a claim for the redemption

premium by virtue of the holders' contractual right to rescind acceleration and its consequences.

## VI.    THE REDEMPTION PREMIUM IS A SECURED OBLIGATION OF EFIH

46.    Pursuant to that certain Collateral Trust Agreement (the "Collateral Trust Agreement") and that certain Pledge Agreement (copies of which are attached hereto as Exhibit D and Exhibit E, respectively), both dated as of November 16, 2009 (as amended, restated, supplemented, or otherwise modified from time to time), EFIH granted to the Collateral Trustee (as defined in the Collateral Trust Agreement) all of EFIH's right, title and interest in, to, and under the Collateral (as defined in the Collateral Trust Agreement) as security for all Obligations (as defined in the Collateral Trust Agreement) of EFIH under the 10% Notes and the 10% Indenture.  The Collateral includes, among other things, a pledge of the majority ownership interest of EFIH LLC in Oncor.

47.    The Obligations of EFIH that are secured by the Collateral include all obligations to pay the Applicable Premium under the 10% Indenture.  *See* Collateral Trust Agreement § 1.1 (defining "Obligations" to include "premium, penalties, fees . . . and other liabilities . . . payable under the documentation governing any indebtedness").

48.    The Obligations of EFIH under the 10% Notes and the 10% Indenture are secured by a perfected, first priority security interest in the Collateral.

49.    As of the Petition Date, the value of the Collateral exceeds the amount of all Obligations under the 10% Notes and all notes that are *pari passu* with the 10% Notes, including the amount of the Applicable Premiums for all such notes.

50.     Additionally, the Debtors are contending that, as of the Petition Date, the value of the Collateral, as implied by (i) the conversion to equity of the EFIH second lien debtor-in-possession financing under the Restructuring Support and Lock-Up Agreement (the "RSA"), and (ii) the Participation Rights received by Fidelity under the RSA, exceeds the aggregate amount of the outstanding principal and accrued but unpaid interest under the 10% First Lien Notes and other notes that are *pari passu* with them, by not less than $4.0 billion.

## COUNT I

**(Declaratory Judgment that EFIH's Refinancing of the 10%
Notes Constitutes a Redemption Requiring Payment
of the Applicable Premium as an Allowed Secured Claim)**

51.     Plaintiff restates and realleges all paragraphs set forth above, which are incorporated by reference as if set forth in full herein.

52.     An actual, justiciable controversy exists between the Plaintiff and the Defendants with regard to whether EFIH is obligated to pay the Applicable Premium by refinancing the 10% Notes prior to December 1, 2015 out of the proceeds of the EFIH First Lien DIP Financing.

53.     Pursuant to Section 3.07 of the 10% Indenture, payment of the outstanding principal and accrued and unpaid interest due on the 10% Notes prior to December 1, 2015 out of the proceeds of the EFIH First Lien DIP Financing obligates EFIH to pay the Applicable Premium.

54.     As of the anticipated redemption date of June 6, 2014, the Applicable Premium for the 10% Notes is $665,245,656, excluding all accrued and unpaid interest due on the 10% Notes.

55.     EFIH granted a perfected, first priority security interest in the Collateral to secure all Obligations (as defined in the Collateral Trust Agreement) under the 10% Notes and the 10% Indenture.  EFIH's Obligations include all obligations to pay the Applicable Premium.

56.     The value of the Collateral exceeds the amount of all Obligations under the 10% Notes and all notes that are *pari passu* with the 10% Notes, including the amount of the Applicable Premiums for all such notes.

57.     The 10% Indenture Trustee, as indenture trustee for the 10% Notes, has a secured claim for the Applicable Premium, including interest thereon.

## COUNT II

### (Declaratory Judgment that EFIH's Default Under the 10% Notes With An Intent To Deny The Premium Requires Payment of the Applicable Premium as an Allowed Secured Claim)

58.     Plaintiff restates and realleges all paragraphs set forth above, which are incorporated by reference as if set forth in full herein.

59.     An actual, justiciable controversy exists between the Plaintiff and the Defendants with regard to whether EFIH is obligated to pay the Applicable Premium by refinancing the 10% Notes prior to December 1, 2015 out of the proceeds of the EFIH First Lien DIP Financing.

60.     EFIH defaulted under the 10% Indenture and 10% Notes with the intent to deny the holders of the 10% Notes the Applicable Premium through a refinancing of the 10% Notes.

61.     Pursuant to Section 3.07 of the 10% Indenture, payment of the outstanding principal and accrued and unpaid interest due on the 10% Notes prior to December 1, 2015 out of the proceeds of the EFIH First Lien DIP Financing obligates EFIH to pay the Applicable Premium.

62.     As of the anticipated redemption date of June 6, 2014, the Applicable Premium for the 10% Notes is $665,245,656, excluding all accrued and unpaid interest due on the 10% Notes.

63.     EFIH granted a perfected, first priority security interest in the Collateral to secure all Obligations (as defined in the Collateral Trust Agreement) under the 10% Notes and the 10% Indenture.  EFIH's Obligations include all obligations to pay the Applicable Premium.

64.     The value of the Collateral exceeds the amount of all Obligations under the 10% Notes and all notes that are *pari passu* with the 10% Notes, including the amount of the Applicable Premiums for all such notes.

65.     The 10% Indenture Trustee, as indenture trustee for the 10% Notes, has a secured claim for the Applicable Premium, including interest thereon.

## COUNT III

**(Declaratory Judgment that the Majority
Holders' Right to Rescind Acceleration of the
10% Notes Gives Rise to an Allowed Secured Claim)**

66.     Plaintiff restates and realleges all paragraphs set forth above, which are incorporated by reference as if set forth in full herein.

67.     An actual, justiciable controversy exists between the Plaintiff and the Defendants with regard to whether the right of the majority of holders, on behalf of all holders, of the 10% Notes to rescind any acceleration of the 10% Notes and its consequences gives rise to a secured claim.

68.     Upon information and belief, EFIH contends that the 10% Notes were automatically accelerated upon the filing of the Chapter 11 Cases and that, as a consequence, the Applicable Premium is not payable.

69.     To the extent that automatic acceleration of the 10% Notes relieves EFIH from the obligation to pay the Applicable Premium, a majority of holders of the 10% Notes have the contractual right, on behalf of all holders by sending written notice to the 10% Indenture Trustee, to rescind the acceleration and its consequences.  The majority holders' right on behalf of all holders to rescind acceleration and its consequences gives rise to a claim within the meaning of section 101(5) of the Bankruptcy Code in an amount equal to the Applicable Premium for the 10% Notes.

70.     As of the anticipated redemption date of June 6, 2014, the Applicable Premium for the 10% Notes is $665,245,656, excluding all accrued and unpaid interest due on the 10% Notes.

71.    EFIH granted a perfected, first priority security interest in the Collateral to secure all Obligations (as defined in the Collateral Trust Agreement) under the 10% Notes and the 10% Indenture.  EFIH's Obligations include all obligations to pay the Applicable Premium and all other liabilities under the 10% Notes and the 10% Indenture, which include the majority holders' right to rescind acceleration and its consequences on behalf of all holders.

72.    The value of the Collateral exceeds the amount of all Obligations under the 10% Notes and all notes that are *pari passu* with the 10% Notes, including the amount of the Applicable Premiums for all such notes.

73.    The 10% Indenture Trustee, as indenture trustee for the 10% Notes, has a secured claim for the Applicable Premium, including interest thereon.

## COUNT IV

**(Declaratory Judgment that, in the Alternative,
EFIH's Refinancing of the 10% Notes
Gives Rise to An Unsecured Claim)**

74.    Plaintiff restates and realleges all paragraphs set forth above, which are incorporated by reference as if set forth in full herein.

75.    An actual, justiciable controversy exists between the Plaintiff and the Defendants with regard to whether the 10% Indenture Trustee, on behalf of the holders of 10% Notes, has an unsecured claim for an amount of no less than the Applicable Premium as a result of the payment by EFIH of the outstanding principal and accrued and unpaid interest due on the 10% Notes out of the proceeds of the EFIH First Lien DIP Financing.

76.     To the extent a secured claim is not allowed in the amount of the Applicable Premium pursuant to Counts I through III above, in the alternative, the payment by EFIH of the outstanding principal and accrued and unpaid interest due on the 10% Notes out of the proceeds of the EFIH First Lien DIP Financing gives rise to an unsecured claim for (i) the Applicable Premium as a result of the redemption of the 10% Notes; (ii) for damages in an amount not less than the Applicable Premium resulting from the default by EFIH under the 10% Indenture and 10% Notes with the intent to deny the holders of the 10% Notes the Applicable Premium through a refinancing of the 10% Notes; (iii) the Applicable Premium as a result of the majority holders' right on behalf of all holders to rescind acceleration of the 10% Notes and its consequences; and (iv) for damages in an amount not less than the Applicable Premium for breach of the no-call provision of Section 3.07(c) of the 10% Indenture.

WHEREFORE, the 10% Indenture Trustee demands that upon a final determination by this Court, judgment be entered in its favor and against the Defendants, as follows:

A.     A Declaration that (i) the payment by EFIH of the outstanding principal and accrued and unpaid interest due on the 10% Notes out of the proceeds of the EFIH First Lien DIP Financing constitutes a redemption of the 10% Notes pursuant to Section 3.07 of the 10% Indenture; and (ii) the 10% Indenture Trustee for the 10% Notes has an allowed secured claim for the Applicable Premium in an amount equal to $665,245,656 as of the

anticipated redemption date of June 6, 2014, excluding all accrued and unpaid interest on the 10% Notes;

B.    A Declaration that (i) EFIH defaulted under the 10% Indenture and 10% Notes with the intent to deny the holders of the 10% Notes the Applicable Premium through a refinancing of the 10% Notes; and (ii) the 10% Indenture Trustee for the 10% Notes has an allowed secured claim for the Applicable Premium in an amount equal to $665,245,656 as of the anticipated redemption date of June 6, 2014, excluding all accrued and unpaid interest on the 10% Notes;

C.    A Declaration that, to the extent automatic acceleration of the 10% Notes could relieve EFIH from the obligation to pay the Applicable Premium, (i) a majority of holders of the 10% Notes have the contractual right, on behalf of all holders by sending written notice to the 10% Indenture Trustee for the 10% Indenture, to rescind the acceleration and its consequences; (ii) the right to rescind acceleration and its consequences gives rise to a claim within the meaning of section 101(5) of the Bankruptcy Code in an amount equal to the Applicable Premium;  and (iii) the 10% Indenture Trustee for the 10% Notes has an allowed secured claim for the Applicable Premium in an amount equal to $665,245,656 as of the anticipated redemption date of June 6, 2014, excluding all accrued and unpaid interest on the 10% Notes;

D.      In the alternative, a Declaration that the payment of the outstanding

        principal and accrued and unpaid interest due on the 10% Notes prior to

        December 1, 2015 out of the proceeds of the EFIH First Lien DIP

        Financing gives rise to an unsecured claim in an amount not less than the

        amount of the Applicable Premium;

E.      Awarding the 10% Indenture Trustee an allowed secured claim for interest

        at the rate of not less than 10% per annum (plus Additional Interest) on the

        amount of the Applicable Premium, from the redemption date to the date

        of a judgment, and for the period thereafter until payment;

F.      Awarding the 10% Indenture Trustee its costs, expenses and reasonable

        attorneys fees, both at trial and on appeal, in addition to all other sums

        allowed by law, including without limitation pursuant to the 10%

        Indenture; and

G.      Granting the 10% Indenture Trustee such other and further relief as the

        Court deems just and appropriate.


                    *[remainder of page intentionally left blank]*

Dated:  May 15, 2014

COLE, SCHOTZ, MEISEL, FORMAN
& LEONARD, P.A.


/s/ Norman L. Pernick
Norman L. Pernick (No. 2290)          Warren A. Usatine
J. Kate Stickles (No. 2917)           25 Main Street,
500 Delaware Avenue, Suite 1410       P.O. Box 800
Wilmington, DE  19801                 Hackensack, NJ 07602
Telephone: 302-652-3131               Telephone: 201-489-3000
Facsimile:  302-652-3117              Facsimile:  201-489-1536
npernick@coleschotz.com              wusatine@coleschotz.com
kstickles@coleschotz.com

   --and--

ROPES & GRAY LLP
Keith H. Wofford                      D. Ross Martin
Mark R. Somerstein                    Andrew G. Devore
1211 Avenue of the Americas           Prudential Tower
New York, NY 10036-8704               800 Boylston Street
Telephone: 212-596-9000               Boston, MA  02199-3600
Facsimile:  212-596-9090              Telephone: 617-951-7000
Keith.Wofford@ropesgray.com           Facsimile: 617-951-7050
Mark.Somerstein@ropesgray.com         Ross.Martin@ropesgray.com
                                      Andrew.Devore@ropesgray.com

   --and--

DRINKER BIDDLE & REATH LLP
James H. Millar
1177 Avenue of the Americas
41st Floor
New York, NY 10036-2714
Telephone:  212-248-3264
Facsimile:   212-248-3141
James.Millar@dbr.com


*Counsel for CSC Trust Company of Delaware,*
*as successor indenture trustee*