## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No. 14-10979 (CSS) |
| *Debtors.* | (Jointly Administered) |
| CSC TRUST COMPANY OF DELAWARE, as INDENTURE TRUSTEE, | |
| *Plaintiff,* | |
| v. | Adversary Proceeding No. 14-50363 (CSS) |
| ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC and EFIH FINANCE INC., | |
| *Defendants.* | |

## <u>AMENDED NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)</u>

**TO**:  Energy Future Holdings Corporation and the above captioned debtors (collectively, the "Debtors"), c/o Richards, Layton & Finger, Attention Mark D. Collins, 920 North King Street, Wilmington, Delaware 19801; Kirkland & Ellis LLP, Attention David R. Dempsey, 655 15th Street N.W., Washington, D.C. 20005.

**PLEASE TAKE NOTICE** that pursuant to Federal Rule of Civil Procedure 30(b)(6), made applicable by Federal Rules of Bankruptcy Procedure 7026, 7030 and 9014, Plaintiff CSC Trust Company of Delaware, as indenture trustee (the "10% Indenture Trustee") for the 10% Senior Secured Notes Due 2020 issued by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (together, the "EFIH Debtors") under the Indenture dated as of August 17, 2010 (together with all supplements, amendments, and exhibits, the "EFIH 10% Indenture"),

will take the deposition upon oral examination of the EFIH Debtors (as defined below) in the above-captioned chapter 11 cases.  The deposition will take place on **July 22, 2014** beginning at **10 a.m.** (Eastern Standard Time) at **WilmerHale, 7 World Trade Center, 250 Greenwich Street, New York, New York, 10007**, or at such other location and time mutually agreeable to counsel.  The deposition will take place before a court reporter and will be recorded by stenographic means, may be videotaped, and shall continue from day to day until it has been completed.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), the Debtors shall designate one or more officers, directors, managing agents, or other persons who consent to testify on their behalf and who are most knowledgeable and competent to testify concerning each of the subjects set forth in Exhibit A hereto.

The Debtors are requested to identify in writing at least 3 business days in advance of the deposition the name(s) of the person(s) who will testify on the Debtors' behalf and the subject matters on which each person will testify.

Wilmington, Delaware
Dated:  July 15, 2014

COLE, SCHOTZ, MEISEL, FORMAN
& LEONARD, P.A.


*/s/ Nicholas J. Brannick*
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Nicholas J. Brannick (No. 5721)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: 302-652-3131
Facsimile: 302-652-3117
npernick@coleschotz.com
kstickles@coleschotz.com
nbrannick@coleschotz.com

Warren A. Usatine
25 Main Street,
P.O. Box 800
Hackensack, NJ 07602
Telephone: 201-489-3000
Facsimile: 201-489-1536
wusatine@coleschotz.com

-and-

WILMER CUTLER PICKERING HALE
AND DORR, LLP
Philip D. Anker
Charles C. Platt
250 Greenwich Street
New York, NY 10007
Telephone: 212-230-8800
Facsimile: 212-230-8888
panker@wilmerhale.com
cplatt@wilmerhale.com

-and-

ROPES & GRAY LLP
Keith H. Wofford                            D. Ross Martin
Mark R. Somerstein                          Andrew G. Devore
1211 Avenue of the Americas                 Prudential Tower
New York, NY 10036-8704                     800 Boylston Street
Telephone: 212-596-9000                     Boston, MA 02199-3600
Facsimile: 212-596-9090                     Telephone: 617-951-7000
Keith.Wofford@ropesgray.com                 Facsimile: 617-951-7050
Mark.Somerstein@ropesgray.com               Ross.Martin@ropesgray.com
                                            Andrew.Devore@ropesgray.com

-and-

DRINKER BIDDLE & REATH LLP
James H. Millar
1177 Avenue of the Americas
41st Floor
New York, NY 10036-2714
Telephone: 212-248-3264
Facsimile: 212-248-3141
James.Millar@dbr.com

*Counsel for CSC Trust Company of Delaware,
as successor indenture trustee*

## <u>EXHIBIT A</u>

### DEFINITIONS

The following definitions apply to the Topics set forth below.

1.      The terms "and" and "or" should be understood either disjunctively or conjunctively as necessary to bring within the scope of any Topic all information that might otherwise be construed to be outside of its scope.

2.      The terms "any" and "all" should each be understood to include "each and every."

3.      The term "Applicable Premium" shall have the meaning ascribed to it in the EFIH 10% Indenture.

4.      The term "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*

5.      The term "Chapter 11 Cases" means the jointly-administered cases of Energy Future Holdings Corp. and its affiliated debtors under chapter 11 of the Bankruptcy Code pending in the United States Bankruptcy Court for the District of Delaware (Case No. 14-10979).

6.      The term "Contested Matter Motion" shall have the meaning ascribed to it in the Scheduling Order.

7.      The term "Debtors" means Energy Future Holdings Corp. and its affiliated debtors in the Chapter 11 Cases, and each of its or their present and former officers, directors, employees, agents, representatives, consultants, attorneys, accountants, and others acting or purporting to act on its or their behalf.

8.      The term "document" means any document or thing as defined in Rule 34(a) of the Federal Rules of Civil Procedure and "writing" and "recording" as defined in Rule 1001 of the Federal Rules of Evidence, including without limitation electronic documents and information in any form in which it may exist.

9.      The term "EFIH 6.875% Indenture" means the Indenture dated as of August 14, 2010 between EFIH LLC and EFIH Finance, as issuers, and The Bank of New York Mellon Trust Company, N.A., as the original indenture trustee, and all supplements, amendments, and exhibits thereto.

10.     The term "EFIH 6.875% Notes" means the 6.875% Senior Secured Notes Due 2017 issued by EFIH LLC and EFIH Finance under the EFIH 6.875% Indenture.

11.     The term "EFIH 10% Indenture" means the Indenture dated as of August 17, 2010 between EFIH LLC and EFIH Finance, as issuers, and The Bank of New York Mellon Trust Company, N.A., as the original indenture trustee, and all supplements, amendments, and exhibits thereto.

12.     The term "EFIH 10% Noteholders" means previous or current holders of the EFIH 10% Notes.

13.     The term "EFIH 10% Notes" means the 10.000% Senior Secured Note Due 2020 issued by EFIH LLC and EFIH Finance under the EFIH 10% Indenture.

14.     The term "EFIH Debtors" means collectively EFIH LLC and EFIH Finance.

15.     The term "EFIH DIP Intercreditor Agreement" has the meaning ascribed to the term in the EFIH Second Lien DIP Motion.

16.     The term "EFIH Finance" means EFIH Finance Inc. and its present and former officers, directors, employees, agents, representatives, consultants, attorneys, accountants, and others acting or purporting to act on its or their behalf.

17.     The term "EFIH First Lien DIP Credit Agreement" has the meaning ascribed to it in the EFIH First Lien DIP Order.

18.     The term "EFIH First Lien DIP Financing" has the meaning ascribed to it in the First Lien EFIH DIP Motion.

19.     The term "EFIH First Lien DIP Motion" means the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance, Inc. for Entry of (I) an Interim Order (A) Approving Certain Fees Related to Postpetition Financing and Granting Such Fees Administrative Expense Priority and (B) Scheduling a Final Hearing; and (II) a Final Order (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH First Lien Refinancing, (E) Authorizing Issuance of Roll-Up Debt to the Extent Authorized by the Settlement Motion, (F) Determining the Value of Secured Claims, and (G) Modifying the Automatic Stay, filed in the Chapter 11 Cases [No. 14-10979, Dkt. 74].

20.     The term "EFIH First Lien DIP Order" means the  Final Order (A) Approving Postpetition Financing For Energy Future Intermediate Holding Company LLC And EFIH Finance Inc., (B) Granting Liens And Providing Superpriority Administrative Expense Claims, (C) Approving The Use of Cash Collateral By Energy Future Intermediate Holding Company LLC And EFIH Finance Inc., (D) Authorizing The EFIH First Lien Repayment, (E) Authorizing Issuance of Roll-Up Debt To The Extent Authorized By The Settlement Orders, And (F) Modifying The Automatic Stay, entered in the Chapter 11 Cases [No. 14-10979, Dkt. 859].

21.     The term "EFIH First Lien Settlement" has the meaning ascribed to the term "First Lien Settlement" in First Lien Settlement Motion.

22.     The term "EFIH First Lien Settlement Motion" means the Motion of Energy Future Holdings Corp., *et al.* for Entry of Orders Approving Certain EFIH Settlements and the Oncor TSA Amendment, filed in the Chapter 11 Cases [No. 14-10979, Dkt. 472].

7

23.    The term "EFIH LLC" means Energy Future Intermediate Holding Company LLC and its present and former officers, directors, employees, agents, representatives, consultants, attorneys, accountants, and others acting or purporting to act on its or their behalf.

24.    The term "EFIH Second Lien DIP Motion" means the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition Second Lien Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH Second Lien Repayment, (E) Authorizing Entry Into and Payment of Fees Under the Commitment Letter, and (F) Modifying the Automatic Stay, filed in the Chapter 11 Cases  [No. 14-10979, Dkt. 477].

25.    The term "EFIH Second Lien DIP NPA" has the meaning ascribed to the term in the EFIH Second Lien DIP Motion.

26.    The term "EFIH Second Lien Indenture" means the Indenture dated as of April 25, 2011 between EFIH LLC and EFIH Finance, as issuers, and The Bank of New York Mellon Trust Company, N.A., as original indenture trustee, and all supplements, amendments, and exhibits thereto.

27.    The term "EFIH Second Lien Notes" means collectively the 11.0% senior secured second lien notes due 2021 issued by EFIH LLC and EFIH Finance under the EFIH Second Lien Indenture and the 11.75% senior secured second lien notes due 2022 issued by EFIH LLC and EFIH Finance under the Second Lien Indenture.

28.    The term "EFIH Senior Toggle Indenture" means the Indenture dated as of December 5, 2012 between EFIH LLC and EFIH Finance, as issuers, and The Bank of New

8

York Mellon Trust Company, N.A., as trustee, and all supplements, amendments, and exhibits thereto.

29.    The term "EFIH Senior Toggle Notes" means the 11.25%/12.25% unsecured senior toggle notes due 2018, issued by EFIH LLC and EFIH Finance under the EFIH Senior Toggle Indenture.

30.    The term "EFIH Unexchanged Notes Indenture" means the Indenture dated as of November 16, 2009 between EFIH LLC and EFIH Finance, as issuers, and The Bank of New York Mellon Trust Company, N.A., as trustee, and all supplements, amendments, and exhibits thereto.

31.    The term "EFIH Unexchanged Notes" means the 9.75% fixed senior notes due 2019 issued by EFIH LLC and EFIH Finance under the Unexchanged Notes Indenture.

32.    The term "EFIH Unsecured Noteholders" means previous or current holders of the EFIH Unsecured Notes.

33.    The term "EFIH Unsecured Notes" means collectively the EFIH Senior Toggle Notes and the EFIH Unexchanged Notes.

34.    The term "First Day Declaration" means the Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., *et al.,* in Support of First Day Motions, filed in the Chapter 11 Cases [No. 14-10979, Dkt.  98].

35.    The term "including" shall mean "including, without limitation" and "including, but not limited to" and shall not be interpreted to imply any limitation on the more general preceding provision unless otherwise expressly stated.

9

36.    The term "Other Notes" shall mean any notes issued by EFIH LLC, EFIH

Finance, TCEH LLC and/or TCEH Finance other than the EFIH 10% Notes, including the EFIH

6.875% Notes, the EFIH 10% Notes, the EFIH Second Lien Notes, the EFIH Senior Toggle

Notes, the EFIH Unexchanged Notes Indenture, and the TCEH Second Lien Notes.

37.    The term "relating to" or "relating thereto" is used in its broadest sense and

includes all matter in connection with, relating to, referring to, describing, discussing, depicting,

identifying, evidencing, concerning, constituting, or with respect to the referenced subject.

38.    The term "RSA" means the Restructuring Support and Lock-Up Agreement,

attached as Exhibit D to the First Day Declaration.

39.    The term "Scheduling Order" means the Scheduling Order With Respect To (A)

Contest Matter Motion, (B) Adversary Proceeding, and (C) Stay-Applicability Motion, entered in

the Chapter 11 Cases [No. 14-10979, Dkt. 803].

40.    The term "Stay-Applicability Motion" shall have the meaning ascribed to it in the

Scheduling Order.

41.    The term "TCEH Finance" means TCEH Finance Inc. and its present and former

officers, directors, employees, agents, representatives, consultants, attorneys, accountants, and

others acting or purporting to act on its or their behalf.

42.    The term "TCEH LLC" means Texas Competitive Electric Holdings Company

LLC, and any of its parents, subsidiaries, affiliated companies and its present and former

officers, directors, employees, agents, representatives, consultants, attorneys, accountants, and

others acting or purporting to act on its or their behalf.

43.    The term "TCEH Second Lien Indenture" means the Indenture dated as of

October 6, 2010 between TCEH LLC and TCEH Finance, Inc., as issuers, and The Bank of New

10

York Mellon Trust Company, N.A., as original indenture trustee, and all supplements, amendments, and exhibits thereto.

44.      The term "TCEH Second Lien Notes" means the 15.0% senior secured second lien notes due originally due 2021 issued by TCEH LLC and TCEH Finance, Inc. under the TCEH Second Lien Indenture.

45.      Use of the singular also includes the plural and vice-versa.

## TOPICS

### Topic No. 1

The drafting, negotiation, terms, and implementation of:

(a) the EFIH 10% Indenture and any indenture (i) that was used as a draft, precedent, or model for the EFIH 10% Indenture or (ii) for any notes that were exchanged for the EFIH 10% Notes;

(b) any indentures for the Other Notes and any indenture (i) that was used as a draft, precedent, or model for any indenture for any of the Other Notes or (ii) for any notes that were exchanged for the Other Notes;

(c) the EFIH 10% Notes and any notes (i) that were used as a draft, precedent, or model for the EFIH 10% Notes or (ii) that were exchanged for the EFIH 10% Notes;

(d) the Other Notes and/or any notes (i) that were used as a draft, precedent, or model for the Other Notes or (ii) that were exchanged for the Other Notes;

(e) any registration statement, prospectus, offering memorandum, information statement, other offering material, or other disclosure document for the EFIH 10% Notes or the EFIH 10% Indenture or any registration statement, prospectus, offering memorandum, information statement, other offering material, or other disclosure document (i) that was used as a draft, precedent, or model for any of the foregoing or (ii) related to the issuance or exchange of any notes that were exchanged for EFIH 10% Notes;

(f) any registration statement, prospectus, offering memorandum, information statement, other offering material, or other disclosure document for the Other Notes or for any indenture for the Other Notes and/or registration statement, prospectus, offering memorandum, information statement, other offering material, or other disclosure document (i) that was used as a draft, precedent, or model for any of the foregoing or (ii) related to the issuance or exchange of any notes that were exchanged for the Other Notes;

(g) the EFIH First Lien DIP Credit Agreement;

11

(h) the EFIH Second Lien DIP NPA; and

(i) the EFIH DIP Intercreditor Agreement.

**Topic No. 2**

The meaning, interpretation, and intention of the Debtors or anyone else generally relating to the EFIH 10% Indenture, the EFIH 10% Notes, and any registration statement, prospectus, offering memorandum, information statement, other offering material, or other disclosure document for the EFIH 10% Notes or the EFIH 10% Indenture, and particularly relating to:

(a) Section 3.07(c) of the EFIH 10% Indenture (and any indenture that was used as a draft, precedent, or model for the EFIH 10% Indenture) including: (i) the meaning of the word "redeem," (ii) whether the Debtors contend that the repayment of principal and interest on the EFIH 10% Notes that has occurred in the Chapter 11 Cases is not a "redemption" of the EFIH 10% Notes and, if so, the bases therefor, (iii) whether Section 3.07(c) of the EFIH 10% Indenture was intended to provide the EFIH 10% Noteholders with "yield protection" or other benefits;

(b) Sections 3.07(a) and 1.01 of the EFIH 10% Indenture (and any indenture that was used as a draft, precedent, or model for the EFIH 10% Indenture) including: (i) whether the Applicable Premium would have been payable in a refinancing of the EFIH 10% Notes outside of bankruptcy, (ii) the basis for any contention by the Debtors that the Applicable Premium is not payable under Section 3.07(a) after the filing of the Chapter 11 Cases, and (iii) the calculation of the amount of the Applicable Premium; and

(c) Section 6.02 of the EFIH 10% Indenture (and any indenture that was used as a draft, precedent, or model for the EFIH 10% Indenture) and its relationship to Section 3.07, including: (i) the meaning of the term "Notes" as used in Section 6.02 and (ii) whether the Debtors contend that Section 6.02 overrides or displaces Section 3.07 and/or is the only applicable section of the EFIH 10% Indenture in determining what is owed to the the EFIH 10% Noteholders in the Chapter 11 Cases.

**Topic No. 3**

Any decisions, negotiations, communications, consideration, or analysis relating to:

(a) any planned, proposed, contemplated, or consummated redemption, refinancing or repayment of the EFIH 10% Notes either in or outside of bankruptcy;

(b) the EFIH First Lien DIP Facility;

12

(c) the treatment of the EFIH 10% Notes in the Chapter 11 Cases;

(d) the EFIH First Lien Settlement;

(e) the dispute over the claim by EFIH 10% Noteholders to payment of the Applicable Premium or to another make-whole payment;

(f) bonuses or other incentive compensation proposed, contemplated, or considered to be paid to any officers, directors or employees of any of the Debtors relating to the completion of the restructuring contemplated by the RSA or any other restructuring of one or more of the Debtors; and

(g) future employment or hiring of any officers, directors, or employees of any of the Debtors or any other party in interest in the Chapter 11 Cases with one or more of the Debtors following confirmation of a plan of reorganization.

**Topic No. 4**

The RSA (including the negotiation thereof and the Debtors' decision to enter into the RSA), and the rights of the parties thereunder if the EFIH 10% Noteholders prevail in the above-captioned adversary proceeding, the Contested Matter Motion, the Stay-Applicability Motion, or any other dispute relating to the entitlement of the EFIH 10% Noteholders to payment of the Applicable Premium or to another make-whole payment.

**Topic No. 5**

The reason(s) for the filing of the Chapter 11 Cases, including the bankruptcy cases of the EFIH Debtors, and the EFIH Debtors' bankruptcy planning and strategy, including the refinancing and repayment of principal and interest on the EFIH 10% Notes in connection therewith.

**Topic No. 6**

Any consideration of alternatives to the Chapter 11 Cases for the EFIH Debtors, including any possible out-of-court restructuring of the EFIH Debtors or redemption or refinancing of the EFIH 10% Notes outside of bankruptcy, or any possible reinstatement or non-impairment of the EFIH 10% Notes in a proceeding under chapter 11 of the Bankruptcy Code.

**Topic No. 7**

The consideration and other benefits to be received by the EFIH Unsecured Noteholders under a restructuring in accordance with the RSA.

**Topic No. 8**

13

Any valuation of either or both of the EFIH Debtors and/or any reorganized Debtors, and any consideration or discussion of the EFIH Debtors' ability to pay the Applicable Premium or to have reinstated, have left in place, or have left unimpaired the EFIH 10% Notes.

**Topic No. 9**

All additional amounts beyond principal and interest paid to date that may be owed to the EFIH 10% Noteholders if there is a determination that the Applicable Premium and/or any other amount is owed to the EFIH 10% Noteholders.

**Topic No. 10**

All communications and documents relating to any of the foregoing Topics.

14