# WILMERHALE

September 11, 2014

**Philip D. Anker**

+1 212 230 8890 (t)
+1 212 230 8888 (f)
philip.anker@wilmerhale.com

**VIA HAND DELIVERY AND ECF**

Hon. Christopher S. Sontchi
United States Bankruptcy Court
  for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

**Re:**     *In re Energy Future Holdings Corp. et al.*, Case No. 14-10979 (CSS), and *CSC Trust Co. of Delaware v. Energy Future Intermediate Holding Co. LLC et al.*, Adv. Proc. No. 14-50363 (CSS)

Dear Judge Sontchi:

      I write on behalf of Delaware Trust Company, f/k/a CSC Trust Company of Delaware (the "Trustee"), as successor indenture trustee for the holders (the "Noteholders") of the 10% Senior Secured Notes Due 2020 (the "Senior Secured Notes" or "Notes"), regarding the so-called Makewhole Litigation.[1] At the telephonic hearing held on August 19, 2014, this Court bifurcated the Makewhole Litigation, with issues regarding the entitlement of the Noteholders to a makewhole or other redemption premium, or related claim for breach of contract (collectively, a "Redemption Claim"), provided that they are solvent, to be considered in Phase One, and with any issues relating to the solvency or insolvency of the EFIH Debtors,[2] and whether any insolvency might give rise to defenses to or otherwise affect the allowance of any such Redemption Claim, to be heard in Phase Two. The Court directed the parties to confer on the terms of an appropriate order and either to submit an agreed proposed order, if the parties were able to reach agreement, or, if they were not, competing forms of order with simultaneous letter briefs explaining, for each party, why its form of order was appropriate.

      The Trustee and the EFIH Debtors were able to agree on most terms for an order of bifurcation. Unfortunately, however, they were not able to agree on the terms addressing one

---

[1] The "Makewhole Litigation" refers to (a) the contested matter seeking a determination concerning the entitlement of holders of the Senior Secured Notes to a makewhole or other redemption premium; (b) the above-referenced Adversary Proceeding; and (c) the Joint Motion of CSC Trust Company of Delaware, as Indenture Trustee, and certain EFIH 10% First Lien Noteholders, for Confirmation that the Automatic Stay Does Not Apply or, Alternatively, for Limited Relief from the Automatic Stay, Solely Regarding Rescission of Acceleration (No. 14-10979, Docket No. 473).

[2] The term "EFIH Debtors" refers to Energy Future Intermediate Holding Company LLC and EFIH Finance Inc.

WilmerHale

September 11, 2014
Page 2

principal issue: whether, as a *factual* matter, Phase One will consider the EFIH Debtors' solvency as it relates to one of several independent, potential bases for the allowance and payment of a Redemption Claim: that the EFIH Debtors intentionally defaulted (or intentionally sought to evade payment of the makewhole premium) under the indentures for the Senior Secured Notes (the "Indentures").[3] Proof of intentional default or evasion necessarily involves an inquiry into the EFIH debtors' solvency—whether the EFIH Debtors had the ability to pay the Senior Secured Notes and their other creditors in full as the debt came due—and should therefore be litigated in Phase Two. The EFIH Debtors evidently disagree. The form of Order that their counsel has shared with us would provide for a "quasi, partial bifurcation" under which discovery and trial as to the EFIH Debtors' solvency would be deferred to Phase Two for all purposes other than the intentional default/evasion issue; as to that one issue, and that one issue alone, discovery and trial regarding the EFIH Debtors' solvency would proceed in Phase One. Respectfully, that approach of bifurcation for some purposes but not others would undermine the intended efficiencies that animated the Court's decisions to bifurcate the Makewhole Litigation in the first place, and would be unfair to the Trustee and the Noteholders.

Some background may be helpful. Some courts have held that where (unlike here) a lender takes affirmative actions to accelerate the debt owed it and to demand (and obtain) its immediate payment, it forfeits the right to a makewhole premium or other claim for the borrower's payment of that debt before its stated maturity. But courts have also recognized an "exception to this exception"—if the borrower intentionally seeks to evade payment of the makewhole premium, such as by intentionally defaulting under the credit agreement, the lender is still entitled to that premium. *See, e.g., Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 691 F.2d 1039, 1053 (2d Cir. 1982) (holding that noteholders were entitled to collect a redemption premium, notwithstanding the noteholders' right to accelerate the notes following the borrower's default, because the borrower had "cause[d] the debentures to become due and payable by its voluntary actions," and "[t]his is not a case in which a debtor finds itself unable to make required payments"). In a recent bench ruling, Judge Drain noted that this rule was "well-recognized" under New York law. *In re MPM Silicones, LLC*, Case No. 14-22503-rdd, Corrected and Modified Bench Ruling on Confirmation of Debtors' Joint Chapter Plan of Reorganization for Momentive Performance Materials Inc. and its Affiliated Debtors, Tr. 35 of

---

[3] We have coordinated with Counsel for the EFIH Debtors so that the Trustee will submit its proposed order and the EFIH Debtors will submit a draft order with their suggested changes over our proposed order so as to avoid burdening the record. The Trustee's proposed order is attached as Exhibit D.

**WilmerHale**

September 11, 2014
Page 3

98:8-13 (Bankr. S.D.N.Y. Sept. 9, 2014).[4] The indenture for the EFIH Debtors' Senior Notes is governed by New York law.

      Here, there is no dispute that had the EFIH Debtors not filed for bankruptcy and had they sought to refinance the Senior Secured Notes outside of bankruptcy to take advantage of a reduction in interest rates in the market, they would have owed the makewhole premium prescribed in the Senior Secured Notes and their Indentures. Their representatives have already so admitted as to their second lien debt,[5] and there is no reason the same rule would not apply to the first lien debt. But the EFIH Debtors claim that the result should be different simply because

---

[4] For the Court's convenience, we have enclosed a copy of the transcript of Judge Drain's Bench Ruling as Exhibit A. In *MPM Silicones*, the debtors were indisputably substantially insolvent, and they sought to pay off the noteholders at plan confirmation, rather than take them out at the outset of the case as the EFIH Debtors did. Under these circumstances, Judge Drain held that the debtors' filing for bankruptcy was not an intentional default or evasion. He also held that the senior noteholders did not have an enforceable claim under the applicable indentures for a makewhole premium, for breach of the "no-call" and "right to de-accelerate" provisions of the indentures, or for violation of the New York common law rule of "perfect tender" (the rule that a lender is entitled to be paid no earlier than the stated maturity of the debt). But he made it clear that the only reason the noteholders did not have such an allowed claim was because the debtors were insolvent. Indeed, Judge Drain recognized that applicable state law would allow such a claim, but he held that the Bankruptcy Code overrode state law in this instance: "As noted previously, New York law would, in fact, provide for such a claim for breach of the rule of perfect tender, at least one for specific performance," but "this is one of the few instances when specific provisions of the Bankruptcy Code disallow such a claim." *Id.*, 46 of 98:13-21. Judge Drain reasoned that the noteholders' measure of damages on "a claim based on New York's rule of perfect tender or a non-call right," or for breach of the de-acceleration right, would be the future interest lost as a result of the debtor's payment before stated maturity of the notes, and as such would be a claim for "unmatured interest" that would "be disallowed . . . under section 502(b)(2) of the Bankruptcy Code." *Id.*, 48 of 98:3-19; 49 of 98:8-19. Judge Drain noted that other bankruptcy courts had allowed such a claim and found section 502(b)(2) inapplicable, but he distinguished those cases because the debtors "[unlike here were solvent and, therefore, the courts found them to be subject to an exception to section 502(b)(2) of the Code's disallowance of claims for unmatured interest." *Id.*, 48 of 98:22-49 of 98:7. Thus, even under the ruling in *MPM Silicones*, which the Trustee believes is flawed in several respects, the Noteholders here would have a valid Redemption Claim provided that the EFIH Debtors are solvent.

[5] *See* Tr. of Hearing, July 1, 2014, 47:17-20 (testimony of Mr. Ying) ("Q: You do understand that outside of bankruptcy EFIH could not have prepaid the second lien notes without a make whole, you do understand that, right? [Mr. Ying]: Yes, I do.").

WILMERHALE

September 11, 2014
Page 4

they filed voluntary bankruptcy petitions immediately before they consummated a long-contemplated voluntary redemption of the Senior Secured Notes.[6] In particular, they claim that those petitions constituted a default under the Senior Secured Notes and Indentures, resulting in the acceleration of the Notes and relieving them of the obligation to pay the prescribed makewhole premium or any other amounts for their violation or denial of the "no-call" and "right to rescind acceleration" provisions of the Notes and the Indentures, as well as under the New York "rule of perfect tender."[7] Even if the EFIH Debtors' claim otherwise had merit under New York law and the facts of this case—and the Trustee firmly believes it does not—the issue would then arise under the "intentional default or evasion" rule whether the EFIH Debtors filed for bankruptcy and immediately sought to refinance the Senior Secured Notes when they (perhaps unlike other debtors in these jointly administered cases) were solvent, with the hope that they would be able to avoid payment of any Redemption Claim that indisputably would be payable had the EFIH Debtors sought to accomplish the very same refinancing outside of bankruptcy. The answer to that question would require discovery and a trial regarding the EFIH Debtors' solvency, as well as regarding other matters that the Court also sought to avoid in Phase One, such as the reasons the EFIH Debtors entered into their restructuring support agreement that mandated that the EFIH Debtors seek to avoid refinance their Senior Secured Notes without paying any Redemption Claim.

To be clear, the Trustee has made no decision to pursue an argument of "intentional default or evasion." It would have to take substantial discovery—including discovery regarding solvency—before making that decision responsibly. And also to be clear, the Trustee believes that—for a variety of reasons, including that the Noteholders took no action to require the EFIH Debtors to repay the Senior Secured Notes before their stated maturity—the Noteholders will be

---

[6] The Debtors filed an 8-K as far back as November 1, 2013, indicating that they intended in bankruptcy to seek to deny the noteholders any makewhole payment. *See* Energy Future Intermediate Holding Company LLC, Report of unscheduled material events or corporate event (Form 8-K), at 12 (Nov. 1, 2013) (stating that in the event of a Chapter 11 filing, EFIH First Lien noteholders "would not receive . . . any make-whole amount, optional redemption premium, or other premium").

[7] In addition to specifying that if the EFIH Debtors redeem the Senior Secured Notes before December 1, 2015, they owe a specified makewhole premium (Section 3.07(a)), the Indentures provide that the EFIH Debtors may not otherwise call the notes (Section 3.07(c)) and that holders of the Notes may rescind any acceleration of the Notes (Section 6.02), something the requisite holders of the Notes sought to do at the outset of these Chapter 11 cases.  For the convenience of the Court, we enclose, as Exhibits B and C, respectively, the principal Indenture and the notice of rescission. The New York "rule of perfect" tender is discussed in note 4 above and Judge Drain's Bench Ruling in *MPM Silicones*.

WilmerHale

September 11, 2014
Page 5

entitled to a valid Redemption Claim whether or not the EFIH Debtors intentionally defaulted or evaded. But it is precisely for this reason—that the Debtors' liability to pay the makewhole premium or any other amounts in connection with the other contract breaches may be subject to resolution on independent grounds that would avoid the need for costly and time-consuming discovery on solvency and related matters—that this Court decided to bifurcate the Makewhole Litigation.

By way of example, if the Court determines at the end of Phase One that the Noteholders have a valid Redemption Claim regardless of the EFIH Debtors' solvency or insolvency, there will be no need for discovery and litigation of that issue in Phase Two. Similarly, if the Court determines at the conclusion of Phase One that the Noteholders have a valid claim as long as the EFIH Debtors are solvent, their solvency may be readily apparent by then. As this Court noted in its decision to bifurcate, picking up a point made by counsel for the EFIH Debtors, "I think it's true and I think it's important to recognize that the case is dynamic, that it's possible the issue will resolve itself through the ordinary or extraordinary development of the case going forward and seeing exactly what ultimately is put on the table." Tr., Aug. 19, 2014, 30:24-31:3. Finally, if this Court determines at the end of Phase One that the Noteholders have no valid Redemption Claim regardless of the EFIH Debtors' solvency and whether the EFIH Debtors intentionally defaulted or evaded payment of the makewhole premium even while they were solvent, there will be no need for discovery and litigation over these matters in Phase Two. In this regard, the Trustee would have no objection (as a procedural matter) were the EFIH Debtors to argue, in Phase One, that, as a matter of state *law* and notwithstanding Judge Drain's decision in *MPM Silicones* and all the other case law, the Noteholders have no valid Redemption Claim even if the EFIH Debtors are solvent and intentionally defaulted and sought to evade payment of the makewhole premium while they were solvent. But the whole point of the bifurcation, as the Trustee understood it, was to avoid expensive, time-consuming *fact* discovery and a trial on these inherently factual, financial issues in Phase One, precisely because they might prove to be legally irrelevant.

In the Trustee's view, the bottom line is this: Either the Makewhole Litigation should be bifurcated or it should not be. A faux, sort-of-but-not-real bifurcation makes no sense, would not achieve the potential efficiencies that the EFIH Debtors championed as the reason for bifurcation and that this Court endorsed, and would be unfair to the Noteholders who would potentially have to litigate solvency and related fact issues in two different Phases of the Makewhole Litigation. This Court has already decided that bifurcation is preferable to no bifurcation. The Court should therefore order bifurcation. The enclosed order so provides. The Trustee respectfully requests that the Court enter that form of order.

We are of course available at the Court's convenience if it has any questions or wishes to discuss any issues.

WILMERHALE

September 11, 2014
Page 6

Respectfully submitted,

*/s/ Philip D. Anker*

Philip D. Anker

Counsel for Delaware Trust Company, f/k/a CSC Trust Company of Delaware, as successor indenture trustee for the holders of the 10% Senior Secured Notes Due 2020